Good morning, Your Honors, and may it please the Court, my name is Daryl Parker and I represent the appellants, and I'd like to reserve four minutes for a rebuttal. All right, you have your clock there and I'll try to also help you. This case involves issues from various stages of the proceedings, and I'd like to focus initially on the summary judgment order because the standard of review is the NOBO, and I'd like to start with the excessive force claim by Julian Ogambi with respect to— Would you move the microphones up a little bit so I can hear you better? I think— I'm sorry, Your Honor. I'd like to start with the excessive force claim for Julian Ogambi with respect to the handcuffing incident. I think the Court below, as well as defense counsel, have analyzed the excessive force with respect to handcuffing incorrectly. The Fourth Amendment says nothing about force. It says nothing about excessive force, and it says nothing about injury. The standard is reasonableness, and the standard is objective reasonableness. And so, is there any evidence that if I look at this particular record, and I look at what the arguments are, and I'll read the precedent in those arguments about handcuffing, it seems to me that one can suggest that handcuffing is excessive force in some instances. So, your argument has some moderate amount of success. But the next thing I say, so what is the standard I use? Well, I think— I have to have a standard, and I'm hoping you're going to say what the standard is, because it seems to me that that's pretty important. It seems to me that if I'm going to look at a standard on excessive force, I would look at what? I think with respect to handcuffing, there's two things you look at. Number one, were the officers aware that he needed an accommodation? Were they aware that he had a problem with his wrist? Is there a case that suggests that? I read what your opponent has given me, and what your opponent has given me is all the person who was handcuffed never suffered any injury at all. There's no excessive force. And that standard is incorrect. Oh, I understand, but there are cases that say that. Initially— And so how do I get around those cases? That's what I'm asking you. Because those cases are no longer correct law. So what is the correct law? The correct law is if the officers are aware— What case should I look at? You should look at Meredith v. Arath. Well, Meredith really doesn't give me anything. I mean, I'm trying to get you to lead me. Supposing that I prompt you and say it's Graham. How does your particular situation factor in with the Graham factors? Because the— How does it? You know what the Graham factors are? Well, there are a lot of different Graham factors according to the— Well, the Graham—outlined, didn't they, in Graham v. Conner, 49 U.S. 386, outlined three factors which I ought to look at. You ought to look at the crime that's involved, the seriousness of the crime. Okay, here we have a marijuana grow, a drug crime, or a potential drug crime, if you will, which in a marijuana grow and a drug crime, often there are weapons involved. It's a serious type of situation. Police are entering into this tough situation. So it would seem to me if we're looking at the severity of the crime, the police get the factor. But I don't think that applies to a handcuffing case, Your Honor. Well, just a minute. Where does it say it doesn't apply to a handcuffing case? Because if I look at only the handcuffing cases, I'm frankly looking at what counsel has given to me, which is he was never injured, so there's nothing. Your Honor, but I respectfully disagree. You cannot— Well, give me the case. There's the Laudon case, the Lalonde case, there's Alexander v. City of Los Angeles. Well, but I don't think those two—I'm being fair with you. I looked every place to find a case that I could rely on to help you. And when I looked at determining whether reasonable force was used, Graham says exactly the factors I'm supposed to apply. Otherwise, I'm left with cases that counsel has given me which say, well, there's no evidence he was ever injured, so therefore he gets nothing. And I got no case to suggest they're wrong except Graham, which says, apply these factors. Your Honor, I believe the correct standard is if a person notifies the police that they need an accommodation and the police are aware that they have an injury, or the police are aware that the handcuffs are too tight, or they complain that the handcuffs are too tight, and under those circumstances, it's objectively unreasonable not to afford it. And what good case should I look at to get that? The cases that I just cited to you. Those are the two? The Fantanit-Haskins case, the E.G. Meredith v. Erath case, the Lalonde v. County of Riverside case. Okay. Then I should look at those cases, and I'm going to find the standard you've now articulated. I believe so. Okay. And I'm not going to ask any more questions about that because I don't agree with you. I don't believe those cases articulate that. In fact, I'm worried that unless you prevail on a Graham factors case, you lose, because every case that I read that has to do with handcuffing, even though handcuffing can be a risk, you have no injury, you lost. The reason that injuries are considered is because if you don't consider injury at all, and you don't consider the fact that somebody asked for an accommodation, a person could claim excessive force every time they were handcuffed. And there's no way to determine whether or not the force used was unreasonable if you don't have an injury. But that's different than the case we have here, because here we have a person who the police officers already recognize has a risk injury. In fact, in the first affidavit submitted by Detective Akins, he acknowledges that he has chronic right wrist pain. He tells the officers before they handcuff him that he has wrist and shoulder pain, and then after he's handcuffed, he tells the officers that he needs an accommodation, the handcuffs are too tight, and they keep him in handcuffs for 45 minutes. I hate to interrupt you, so are you suggesting that the original handcuffing was reasonable, but after they heard this information, they should have taken them off? Yes. That's your argument? That's part of my argument. And these cases you've cited to me stand for that proposition? Yes, Your Honor. It's the comment by the arrestee or the detainee that controls it. If the arrestee or detainee doesn't say anything and just complains later that the handcuffs were too tight, then I would agree that's not an excessive force case. But once the police know that there's an injury involved, and once the police know that the handcuffs are too tight and he's complaining about pain, to not adjust the handcuffs or to not take any action whatsoever is objectively unreasonable, and that's the basis for that claim. Do you have others you want to move to because I've kind of taken the overtime on that? Yes, I'm sorry, Your Honor. The failure to knock and announce. There are two problems with the court granting summary judgment with the failure to knock and announce. One is there's a material question of fact of whether or not the police knocked and announced. But there's also a question of fact as to whether or not the officers in the back entered the backyard before the officers entered the home. Well, again, and I'm hating to steal all comment time from my good colleagues, and they can cut in and I'll shut up. I looked at your knock and announce claim, and while I understand officers are generally required to knock and announce, they're not required to do so if it would be dangerous or futile, or would inhibit the effective investigation of the crime, allowing destruction of the evidence. That's from Richards v. Wisconsin, which is, again, a United States Supreme Court case. And as I understand the facts here, and you can correct me, the officers which were surrounding the residents in the back, not in the front, announced their presence and then encountered an individual in the backyard, and they yelled at him to hit the ground. Now at that point, given they had announced, they weren't knocking because they were outside the premises, they'd announced and they'd yelled at him to hit the ground, and they'd encountered him, then I say, why is it not futile? Why is it not just inhibit the investigation? Because there certainly would allow for destruction of evidence at that point, given that people in the residence know the officers are there to force the officers in the front to knock and announce. There are two problems with that analysis, Your Honor. One is marijuana trees cannot simply be destroyed in a matter of seconds or minutes. Well, it isn't. We're just not looking at the trees. Right. But there's a second. If we have anything to do with marijuana, it's not just that that's on the trees. And I don't know that there are trees. I call them plants, but you may know more about that than I do. But the bottom line is, there's a lot of stuff with marijuana that can be destroyed. Well, let's assume for a moment that that's true, that there were drugs capable of being destroyed instantly. Money, drugs, guns. Right. Let's assume that that's true. There's a material issue of fact as to the sequence. You can't ignore the testimony of Adrian Monroe, who says that Karen called for Julian before the officers came into the backyard and told him to get on the ground. There's a material issue of fact as to whether or not the exigencies that you just described actually existed. I wanted to just let you know you have about three and a half minutes, so your choice on whether you want to proceed or save that time. Three and a half minutes total? Yes. All right. I'd like to reserve that. All right. Good morning. May it please the Court. I'm Kirk Ellis, and I have the privilege of representing the city of Grandview, its law enforcement officers, as well as Yakima County defendants, Therese Murphy and Detective Tucker. I'm joined by Tom Miller, who represents Detective Negrete in this action, and we'll be splitting our time evenly. I intend to address the issues related to summary judgment and the issue of the discovery dispute over Travis Shepard's deposition testimony. Mr. Miller will address the issues related to the trial. As the Court is aware, this case started out much more complicated than where it stands today. Originally, there were 17 named defendants and 13 causes of action. Through the course of time, many of those defendants were dismissed prior to the actual summary judgment in this case. Additionally, as the Court is aware, as both defendants briefed, the plaintiffs have abandoned most of their claims, actually claims, I believe, 6 through 13. Notable of those dismissal is their state law claims. So we know what we don't have, so why don't you talk about what we do? Thank you, Your Honor. Maybe you could respond to his arguments. Happily, Your Honor. I think Mr. Parker made two notable admissions in his presentation to the Court. Number one, if you rule in favor of the plaintiffs and reverse based upon the record before you, every handcuffing will result in an excessive force case. That would not be the case, though. I think the distinction he drew and the one that would be helpful for you to address is that would be true in the run-of-the-mill cases. But he's saying if you have a situation where after you've handcuffed an individual, they bring to your attention that they have an impaired situation, that that raises a different question. So would you address that? Thank you, Your Honor. Yes. I still would encourage the Court to avoid that result because, as the judge indicated, the Graham factors, if you look at those factors, that's a general broad view. The recent decision from the Supreme Court, White v. Pauley, a qualified immunity case, which I'm sure the Court is aware, indicates that even that broad Graham view is not appropriate. The plaintiffs have the burden of directing the Court to a specific case, a particularized case. And as I stand here, I'm unaware of any cases whereby once an individual is handcuffed, they make a complaint, request an accommodation to loosen the handcuffs. All the cases that I'm aware of indicate that once that person is handcuffed, the officers are not obligated to unhandcuff that person and recuff that person unless there is some reason to believe that that person is injured or being injured. All we have, the only record... But he was injured. He came, he's like the eggshell plaintiff. He came with a preexisting injury. So how do you accommodate that in the case law? I don't believe there is an accommodation, Your Honor. And in 2009, when this incident took place, there certainly, to my knowledge, was not a case on point which would have notified these officers that that was clearly established law at that time. There could be a constitutional violation, just for talking purposes, but no established law at that point. Correct, Your Honor. Did the judge really ever get to that point in this case? It didn't seem to me the judge ever got to the immunity issue. The judge said there's no constitutional violation. I believe that is correct analysis, Your Honor. Where you're going is you're saying, well, we'll allow you to have the violation, but there's no law on point in quote, quite, which we get quite now all the time since it came down. But I thought your argument was all about there's no violation at all. That is my argument, Your Honor. And so why are the, if you will, gram factors not the appropriate test? I'm not saying, Your Honor, with all due respect, I'm not saying that they're not the appropriate factors. So if I apply the gram factors, how does your client come out? I believe they still prevail, Your Honor. We talked about the severity of the crime with your opponent. And the next factor was whether the suspect poses an immediate threat to the safety of the officers. It doesn't seem to me that they did. I would respectfully disagree, Your Honor. As you indicated. What is in the evidence to suggest that they pose an immediate threat? The evidence before the court is that this was a felony warrant, which was being executed on a known marijuana operation. It may seem today, as we look at it in hindsight, that the officers should have not been concerned about their safety or anything like that. But at the time when they entered that home, they did not know what they were going to encounter. They encountered Mr. Algamdi walking through the kitchen. Mr. Algamdi is a large man. They handcuffed him. The evidence establishes that he sat and waited while they executed the warrant. He was in handcuffs for no more than 45 minutes, which the cases all indicated. Well, the third factor, the government fails for sure, because that is whether the suspect is actively resisting arrest or attempting to evade arrest. He didn't do any of that. I will admit that, yes, Your Honor. So unless you win on the first two factors, you lose under the Graham factor. Your Honor, with all due respect, I would disagree. This was a high-risk situation from what the officers went in knowing. Well, pardon me, Mr. Ellis. You know, something that bothers me about this, Mr. Akins knew that the defendant had a medical marijuana certificate. And when he went to state the facts for his arrest warrant, he eliminated that fact. Why isn't that judicial deception? Why is it not judicial deception, Your Honor? It's not judicial deception because the court was aware of the fact, the court was well aware of the fact that Mr. Algamdi had a medical marijuana permit. It was by the court's instructions to talk to the prosecutor that that fact was removed. Where in the record is there some indication that the court knew that the defendant had a medical marijuana certificate, even though Mr. Akins pulled that fact, omitted that fact from his request for a warrant in his affidavit? It's found in the summary judgment declarations of both Detective Akins and Therese Murphy.  And the first time, then Therese Murphy told the judge that the medical marijuana information had been removed before the warrant was actually signed. That is in Murphy's declaration? In Murphy's declaration and in Akins' declaration. You've now started to bleed into your colleague's time. So I just want to let you know. Thank you, Your Honor. Just briefly on the knock and announce, I think the second admission that Mr. Parker made was that Mr. Monreal's testimony was that Karen Sinclair had called for Mr. Algamdi before the officers came in. That signifies that they were aware of the officers at the front of the house. That's if the timing is that Ms. Sinclair called for Mr. Algamdi while the officers were knocking at the front of the home. That's in the declaration. I'm sorry, that is in the deposition testimony of the minor KS. Thank you. Thank you. Good morning, may it please the court. Tom Miller on behalf of Detective DeGretti. I would like to just touch briefly on the excessive force claim as discussed before and point out that as a preliminary matter, Detective DeGretti had no involvement in handcuffing plaintiffs. That is undisputed. He also did not observe any improper behavior during that process. There's no evidence that he even saw them be handcuffed. Be that as it may, what plaintiff's counsel would have this court rule is that all a suspect would need to say when he or she is being handcuffed is, I have a sore wrist. And without any evidence of cognizable injury, that person by invoking those words could then preserve for themselves a Fourth Amendment claim. And I would submit that that is not the way the law works under the Fourth Amendment and under Graham v. Conner. Do you have to produce a medical certificate? No. I mean, what's the guard against? That's the question. Well, for one, there was no continued complaint of injury in this case. Second, there's no evidence of any medical damages. He never went to a doctor. He never saw anyone for any injury. There's no evidence before this court that he sustained even an abrasion to his wrist. So without more, you can't just say sore wrist, I get out of handcuffs, which leads me to the second point. Smith v. City of Hemat in the Ninth Circuit, as this court is well aware, another issue that will be looked at under the Graham evaluation is whether there are less intrusive alternatives available. There are no less intrusive alternatives here to handcuffs other than zip ties, which I think would probably have the same effect of which Mr. Algamdy complained. So there is no, this is a lose-lose situation for police as the way the counsel has framed this issue. This is a path that would be fraught with danger and peril for police. Were there to be some rule of law that if a suspect says sore wrist and doesn't come forward with any sort of injury, that he then has a Fourth Amendment claim for excessive force. So you're really not arguing, as I understand it, that if he has no injury, he has no claim. You're really trying to make an argument back against this argument that if I say I have a problem, that you have to unhandcuff me. Because in that instance, you didn't have any injury at all. Is that what you're saying to me? I mean, when I read your cases, it seemed to me what you were saying is, no injury, no claim in any instance. I think the law does stand for that. There needs to be more than just this, hey, I have a wrist problem. Don't handcuff me, please, Mr. Officer. And then moving past that, if we look at the Saucier v. Katz Qualified Immunity Analysis. Certainly, under these facts, in this record, you cannot say that every reasonable officer in the arresting officer's position would know that it was unreasonable and constitutionally impermissible to use handcuffs on Mr. Al-Gandhi. That's why the poly- You're saying, skip the constitutional violation and go to the second prong. There's no law that would say what happened here was bad. Exactly, and that's- That's what I was discussing with your colleague, that on a de novo review, you can look at either prong, correct? Correct. Pearson v. Callahan, which is a 2009 Supreme Court case, specifically says that, that you don't need to necessarily analyze step one. You can skip to prong two of Saucier analysis. I would also like to entertain any questions the court may have about other issues, if there are any. Where you were assigned to talk about which issues? The trial issues. The trial issues. And I would submit the briefing lays this out fairly clearly. I don't have any further questions, but maybe my colleagues do. No. On the trial? I don't. Thank you. Thank you, Your Honor. I think you have some time left. Mr. Parker. Your Honor, when you look at the totality of the circumstances in this case, with respect to the gram factors, Mr. Algambi made no secret about the fact that he was growing marijuana in his backyard. When the officers knocked prior to this incident, he took them back there. He showed them the marijuana grow. He showed them their certificate. There was no issue with that. When his certificate was renewed the next year, he took the certificate down to the police department, and he lodged it with the clerks so they would know what was going on. The officers in this case, they didn't even handcuff Karen Sinclair because this was not a situation where they really honestly believed they were dealing with drug dealers. They knew what he was doing. They knew what the situation was. Officer Akins admitted that at no time had he ever seen anybody buy drugs from him. He had never seen a drug transaction. They did not use a police officer to go in and make a buy to see whether or not he was using this for personal use or whether this was a drug operation. So the gram factors are all in my favor, but the alternative is not to simply unhandcuff the person. You know, if the person is complaining that the handcuffs are too tight or that he has a wrist injury, they can use multiple handcuffs to make the handcuff broader so that his arms are not pulled as tightly behind his back, or they can simply loosen the handcuffs depending on the situation. What do you say to what the government said to Judge Bea's question on judicial deception? I believe there was judicial deception. Well, I guess I'm anxious to hear your argument because as I understand it, under judicial deception, if I can look at the affidavit and erase all the things that were in there that you might even say are deceptive, and I can still find probable cause, there is no deception. Yes, I think the... Isn't that the standard? That is the standard. So in this particular situation, they saw marijuana growing. It was growing in the backyard. There were lots of plants growing. It seems to me there's probable cause with just that. There's probable cause for a search warrant for... Probable cause for them to search the house. Yeah, that... And therefore, if there was any deception whatsoever, if I eliminate it all right there, bare bones in the affidavits, bare bones in what they presented, they saw marijuana plants growing in the backyard go in. Your only defence to that is I have a marijuana permit. OK. Is a marijuana permit an offset to probable cause or is it just an affirmative defence under Washington law? It's only an affirmative defence as to... So therefore... Oh, I can't negate probable cause under Washington's Supreme Court law. Yes, it can with respect to Sinclair. Because if you look at the statute, you look at how the statute is set out, it says affirmative defence with respect to a marijuana grow and having a marijuana permit. But with respect to somebody who is present in the house where marijuana is being grown, that's not an affirmative defence. It says the state shall not prosecute. It does not say that this is an affirmative defence. That's why, with respect to... Well, the only way to get around this, even for the person who's in the house, is to say, well, I got a marijuana grow, my friend has one, because otherwise, she's there, she knows they have all that marijuana growing, there's probable cause to arrest. There isn't for her because the statute specifically states she shall not be prosecuted. But I would like to address your last point because I'm almost out of time. Well, you are out of time because you have a red light, but I'm going to let you finish. With respect to judicial deception, if the magistrate knows and the officers know that you're dealing with a drug trafficking situation, you're going to have armed police officers, you may even use a SWAT unit, you're going to come and you're going to approach the situation quite differently than if you know that this is a medical marijuana situation and this person is growing marijuana. Perhaps in that situation, you would simply knock on the door and say, look, you have marijuana trees in here or plants in here, let me see your ID card. So the way the police react, based on what Aikens told the officer, determined what they did and whether or not their encounter was reasonable. And because of the judicial deception, all of the officers were looking at this as a major drug operation and they approached the house that way. If Aikens had not omitted that from the search warrant and the search warrant affidavit, the officers and the entire operation would have been simply, we noticed there's marijuana outside your house, we want to see what this is about, let us take a look. But that's not what happened. Thank all counsel for your argument this morning. Sinclair v. Aikens and Negrete is submitted.
judges: McKeown, Bea, N.R. Smith